Filed 2/11/21  P. v. Cabrera CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDUARDO LLAMAS CABRERA<br><br>Defendant and Appellant. | B299473<br><br>Los Angeles County<br>Super. Ct. No. VA145880 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge. Affirmed.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Eduardo Llamas Cabrera was convicted of attempted murder, robbery, and assault with a deadly weapon and sentenced to 159 years to life in prison. On appeal, Cabrera contends: (1) insufficient evidence supports his attempted murder conviction; (2) the trial court erred in denying his motion to strike his prior strike convictions; and (3) the court erred in failing to stay the sentence for his robbery conviction under Penal Code[1] section 654. We reject these arguments and affirm.

# FACTUAL BACKGROUND

## 1.    Prosecution Evidence

Cabrera approached Manuel Cruz outside a bank in Huntington Park. Cabrera, who was holding a gun, told Cruz to hand over his wallet. After Cruz complied, Cabrera told him to hand over more money. Cruz put his hands in his pockets and replied that he didn't have any more. Cabrera became angry, grabbed Cruz by the neck, and struck Cruz on the left side of the head with the gun.

Cabrera then started shooting at Cruz. Although the first shot missed, the second shot struck Cruz in the hip. Cruz fell to the sidewalk and rolled into the gutter. As Cruz was lying on the ground, Cabrera shot him several times in the abdomen and removed a second wallet from Cruz's pants, which contained no money. Cabrera then walked toward his car, turned around, walked back to Cruz, and said, "Now, I'm going to kill you."

---

[1] All undesignated statutory references are to the Penal Code.

Although Cruz couldn't remember if Cabrera fired another shot, a witness saw Cabrera shoot Cruz again.

While Cabrera was robbing Cruz, Virginia Monge was in her car near the bank. Monge watched the altercation until Cabrera drew his gun and pointed it at her. She then put her car in reverse, backed into the parking lot, and heard about two gunshots fired from where Cabrera had been standing. Monge ran inside the bank and heard two or three more gunshots.

### 2. Defense Evidence

Cabrera claimed he wasn't the person who shot Cruz. He loaned his car to his cousin on the day of the shooting. The cousin left a gun inside the trunk when he returned the car. The cousin told Cabrera that he used the gun to take care of a "child molester." Cabrera intended to get rid of the gun, so he moved it to another car. The police later found the gun while Cabrera was driving that car.

## PROCEDURAL BACKGROUND

The People charged Cabrera with attempted murder of Cruz (§§ 664/187, subd. (a); Count 1); robbery of Cruz (§ 211; Count 2); and assault with a firearm of Monge (§ 245, subd. (a)(2); Count 3). The People alleged Cabrera used a firearm during the commission of each offense (§§ 12022.5, 12022.53, subds. (b)–(d)), and that he personally inflicted great bodily injury on Cruz (§ 12022.7, subd. (a)). The People also alleged Cabrera suffered two prior convictions in February 1999, one for robbery and one for burglary, both serious or violent felonies under the Three Strikes law (§§ 667, 1170.12).

Cabrera waived his right to a jury trial. The court found Cabrera guilty of all three charges. The court also found true the

3

firearm, great bodily injury, and prior convictions allegations. The court sentenced Cabrera to a total term of 159 years to life in prison, consisting of: 64 years to life for Count 1, plus consecutive terms of 60 years to life for Count 2 and 35 years to life for Count 3.

## DISCUSSION

### 1. Sufficiency of the Evidence to Support Cabrera's Attempted Murder Conviction

Cabrera contends insufficient evidence supports his conviction for attempted murder. Specifically, he claims the People failed to prove he had the specific intent to kill Cruz. As we explain, substantial evidence supports Cabrera's conviction.

When a defendant claims insufficient evidence supports his conviction, we review the entire record in the light most favorable to the judgment to determine whether any rational trier of fact could have found the evidence proved the elements of the crime beyond a reasonable doubt. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We draw all reasonable inferences in favor of the judgment. (*Ibid.*) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citations.]" ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.) Thus, before we may set aside the judgment, it must be clear that " ' "upon no hypothesis whatever is there sufficient evidence to support" ' " the verdict. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

To support a conviction for attempted murder, the People must prove the defendant committed a direct but ineffectual act

4

with the specific intent to kill his victim. (*People v. Lee* (2003) 31 Cal.4th 613, 623.) Intent to kill and express malice are the same thing for purposes of attempted murder. (*People v. Smith* (2005) 37 Cal.4th 733, 739 (*Smith*).) To prove express malice, the People must show the defendant either wanted the victim to die or knew with substantial certainty that the victim's death would occur as a result of the defendant's actions. (*Ibid.*)

While motive is not an element of attempted murder, it can be probative of the defendant's intent to kill. (*Smith, supra,* 37 Cal.4th at p. 740.) And because direct evidence of the defendant's intent rarely exists, such intent is usually inferred from all the circumstances surrounding the defendant's conduct and the circumstances of the crime. (*Id.* at p. 741.) For instance, the act of firing a gun at close range in a way that could inflict a fatal wound had the bullet hit its intended target is sufficient to support a finding of intent to kill. (*Ibid.*) The fact that the victim survived the defendant's attack does not, by itself, negate an inference that the defendant harbored an intent to kill. (*Ibid.*) Thus, an inference of intent to kill can be drawn from evidence of a purposeful shooting with lethal force. (*Id.* at p. 742.)

Here, the circumstances surrounding the shooting support a finding that Cabrera intended to kill Cruz. When Cabrera fired the first shot, Cruz had already complied with Cabrera's request to hand over his wallet and any other money he had. Cruz didn't try to resist Cabrera or otherwise appear to pose a threat to Cabrera completing the robbery. It was only after Cabrera became angry about the amount of money Cruz was carrying that Cabrera started to shoot. (See *Smith, supra,* 37 Cal.4th at p. 740 [motive may be probative of intent to kill].)

5

Cabrera shot Cruz multiple times at close range. Several of the shots were fired while Cruz was lying incapacitated on the ground, and some of them were directed at Cruz's abdomen, which certainly could have been, but fortunately were not, fatal. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1058, 1082 [defendant killed victim by shooting him at close range in the abdomen, which supported a finding that defendant acted with an intent to kill].) Thus, Cabrera's act of shooting Cruz at close range in a manner that could have inflicted a fatal injury is sufficient to support a finding that Cabrera acted with the intent to kill. (*Smith, supra*, 37 Cal.4th at p. 741.)

Cabrera's intent to kill Cruz is also clear from Cabrera's conduct near the end of the encounter. After shooting Cruz several times, Cabrera started to walk toward his car before turning around to return to where Cruz was lying on the ground. Cabrera then stood over Cruz and said, "Now, I'm going to kill you." Although Cruz couldn't remember whether Cabrera fired another shot at that point, one of the witnesses who watched the altercation testified that Cabrera fired at least one more shot before fleeing the scene. Thus, in light of the circumstances surrounding the shooting, it was more than reasonable for the court to find Cabrera intended to kill Cruz.

Cabrera argues the court erred in relying on Cruz's testimony that Cabrera threatened to kill him before fleeing the scene. According to Cabrera, Cruz's testimony was unreliable because no other witnesses testified they heard Cabrera say he would kill Cruz. But the testimony of a single witness is sufficient to establish any fact. (Evid. Code, § 411.) And, as the trier of fact, the court was in the best position to evaluate Cruz's credibility. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) We

therefore won't second-guess the court's decision to rely on Cruz's testimony in finding Cabrera acted with the intent to kill. (*Ibid.* ["In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts"].)

## 2.    The Court's Denial of the *Romero* Motion

Cabrera next contends the court abused its discretion when it denied his motion to strike his prior strike convictions. As we explain, this argument lacks merit.

Prior to sentencing, Cabrera asked the court to strike his prior strike convictions under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). The People opposed the motion. Although Cabrera's prior strike convictions were from 1999, the People argued the "calculated" and "aggressive" manner in which Cabrera committed the underlying attempted murder, robbery, and assault shows he falls within the spirit of the Three Strikes law. The court denied Cabrera's motion, explaining: "[T]he court heard the testimony. This was a court trial. And counsel for the defense, your client's strikes are from 1999, but the behavior in this case shows the violent nature of the defendant."

Under section 1385, the trial court may strike a defendant's prior strike convictions. (§1385; *Romero*, *supra*, 13 Cal.4th at pp. 529–530.) Before deciding to strike a prior conviction, the court must consider several factors, including the nature and circumstances of the current and prior offenses and the particulars of the defendant's background, character, and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) Accordingly, the court's findings concerning "the nature and circumstances of a defendant's triggering offense may play a significant role in determining the sentence that is actually

imposed upon the defendant under the Three Strikes law." (*In re Coley* (2012) 55 Cal.4th 524, 560 (*Coley*).)

While a court must state on the record its reasons for granting a motion to strike a prior conviction, it is not required to explain its reasons for denying such a motion. (*Coley, supra,* 55 Cal.4th at p. 561.) We review a court's denial of a motion to strike a prior conviction for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).) The decision not to strike a prior conviction is an abuse of discretion only when the factors outlined above "manifestly support the striking of a prior conviction and no reasonable minds could differ … ." (*Ibid.*) In other words, the circumstances "must be extraordinary" for a defendant with multiple prior strikes to fall outside the "spirit" of the Three Strikes law. (*Ibid.*)

Here, the court acted well within its discretion to deny Cabrera's motion to strike his prior strike convictions. The court heard evidence that Cabrera targeted and viciously attacked Cruz without provocation. Although Cabrera didn't need to use violence to accomplish the robbery in this case, he struck Cruz on the side of the head with a gun, shot Cruz at close range several times in the leg, hip, and abdomen, and stated he intended to kill Cruz all because he was unsatisfied with the amount of money Cruz was carrying.

The court also stated that it considered the fact that Cabrera's prior strike convictions occurred about 18 years before the underlying offenses. It was reasonable for the court to find the remoteness of the prior convictions was outweighed by the violent and callous manner in which Cabrera committed the underlying crimes. That is, the facts of this case demonstrate an escalating, not deescalating, pattern of violence in Cabrera's

conduct since his prior strike convictions. This case, therefore, is not an "extraordinary" one that falls outside the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 376.)

### 3. Imposition of Multiple Sentences Under Section 654

Finally, Cabrera argues the court erred when it did not stay the sentence on his robbery conviction. According to Cabrera, the robbery and the attempted murder were part of an indivisible course of conduct prohibiting the imposition of multiple sentences under section 654. We disagree.

Under section 654, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The statute applies not only where there was one "act" in the ordinary sense, but also where an indivisible course of conduct violated more than one statute. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.)

" 'It is [the] defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] ... [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]' " (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) But where the defendant harbors multiple criminal objectives that are independent of, and not merely incidental to, each other, he may be punished for separate violations committed during his course of conduct, even though the violations shared common acts

9

or were part of an otherwise indivisible course of conduct. (*People v. Vazquez* (2020) 44 Cal.App.5th 732, 737 (*Vazquez*).)

A court has broad discretion in determining whether section 654's prohibition on multiple punishment applies in any given case. (*Vasquez, supra*, 44 Cal.App.5th at p. 737.) A court's determination, express or implied, "that two crimes were separate, involving separate objectives," under section 654 is a question of fact we review for substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618.) We review the evidence in the light most favorable to the judgment and will affirm the court's sentencing decision if it is supported by substantial evidence. (*Vasquez*, at p. 737.)

Substantial evidence supports the court's implied finding that Cabrera harbored separate intents when he robbed and attempted to kill Cruz. The amount of force Cabrera used during the attempted murder went far beyond that which was needed to complete the robbery. As the facts show, Cabrera was able to obtain Cruz's first wallet with only the use of fear. Cabrera didn't hit or shoot Cruz at that point, and Cruz didn't struggle to keep his first wallet. Cabrera only started to shoot Cruz after becoming angry about the amount of money contained in Cruz's wallet.

Cabrera also didn't need to use additional force to obtain the second wallet while Cruz was lying on the ground after being shot in the leg and the abdomen. Nothing in the record indicates Cruz resisted or otherwise posed any threat to Cabrera completing the robbery. In any event, as we explained above, Cabrera clearly harbored a separate intent to kill after he took Cruz's property. After shooting Cruz several times, Cabrera walked to his car while Cruz was incapacitated on the ground,

10

turned back, said he was going to kill Cruz, and fired at least one more shot at Cruz before leaving the scene.

In short, there is ample evidence to support an inference that Cabrera shot Cruz with the intent kill, not to facilitate the robbery. The court therefore didn't abuse its discretion in imposing multiple punishments for the robbery and attempted murder.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.

11